## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TIFFANY RENEAE NORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 24-4023-KHV** |
| | ) | |
| **FRITO-LAY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## MEMORANDUM AND ORDER

On April 1, 2024, Tiffany Reneae Norris filed suit against her former employer, Frito-Lay, Inc. Plaintiff alleges that in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44-1001 et seq., she experienced unlawful sexual harassment/hostile work environment (Count I) and retaliation (Count II), which resulted in her constructive discharge. Pretrial Order (Doc. #29) filed February 28, 2025 at 7. This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #30) filed March 7, 2025. For reasons set forth below, the Court overrules defendant's motion.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at

248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must set forth specific facts supported by competent evidence. Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

## **Factual Background**

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

Defendant operates a facility in Topeka, Kansas. Between November of 2021 and January of 2022, plaintiff worked there as a temporary employee through CorTech, a staffing agency.[1] Plaintiff had previously worked as an exotic dancer at three different clubs, including one named Baby Dolls.

On January 25, 2022, plaintiff became a regular employee of defendant. Both as a temporary and a regular employee, plaintiff worked in the GES Department as a picker loader, which involved loading and unloading boxes from trucks.[2] Once she became a regular employee, plaintiff also became a member of the union, subject to its Collective Bargaining Agreement with defendant. The agreement imposed a probationary period for the first 90 days of plaintiff's employment, and as a probationary employee, she was not entitled to all provisions of the Collective Bargaining Agreement. After becoming a regular employee, plaintiff's job duties remained the same, but on occasion, defendant moved her into different areas of the GES

---

[1]    In her statement of additional material facts, plaintiff asserts that while she worked as a temporary employee, defendant's resource officer Chad Gordon sexually harassed her. See Plaintiff's Response In Opposition To Defendant's Motion For Summary Judgment And Memorandum In Support (Doc. #34) filed April 11, 2025 at 14–17. The Court does not include this evidence for two reasons. First, plaintiff does not bring any claims relating to Gordon's conduct. See Pretrial Order (Doc. #29) at 7 (Plaintiff Norris's Claims) (Count I–plaintiff subject to unwanted sexual conduct by Jones and defendant refused to separate plaintiff from Jones) (Count II–defendant did not take appropriate action against Jones following plaintiff's complaint and forced plaintiff to work alongside Jones, resulting in constructive discharge). Because the pretrial order is the controlling document for trial, any evidence of harassment by Gordon is irrelevant to the claims currently before the Court. See Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002).

Second, at the time of plaintiff's interactions with Gordon, she worked for defendant through a staffing agency, CorTech. Plaintiff has not provided evidence or argued that at that time, defendant was her employer or a joint employer with CorTech. Absent such evidence, plaintiff's evidence relating to Gordon is irrelevant. See Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996) (statutory liability only borne by employers); see also 42 U.S.C. § 2000e-2.

[2]    Neither party specifies what "GES" represents or means.

Department.  For example, in February of 2022, defendant moved plaintiff from "order picking" to "repack" for several weeks.  Defendant also varied whether plaintiff worked by herself or with other employees.

Defendant employed Andre Jones as a picker loader.  In March of 2022, another female employee of defendant, Loriann Funk, had reported to a supply chain leader that while on a smoke break with Jones, he showed her a picture of his penis and told her "I just wanna make sure it's good enough."  Statement By Loriann Funk (Doc. #31-6) filed March 7, 2025 at 23.  The supply chain leader forwarded the information to Human Resources, and pending an investigation, HR suspended Jones for the incident.  Nathan Muniz (HR Associate Manager) determined that it was a "he said, she said" situation, but that Jones would undergo coaching when he returned from his suspension.[3]  On March 12, 2022, defendant issued Jones a Documented Discussion, which stated that future violations of defendant's policies would result in disciplinary action, up to and including termination of his employment.

On May 22, 2022, defendant assigned plaintiff and Jones to unload a trailer together.  Earlier that day, Jones had asked plaintiff for a ride home after work.  Plaintiff had never had any problems with Jones, and she agreed.  While working in the trailer, Jones began asking plaintiff questions, including whether she was married, whether she had kids, where she was from and where she had previously worked.  Plaintiff responded that she had previously worked at Baby Dolls.  Jones asked plaintiff if she had been a bartender at Baby Dolls, to which she answered "no."  Deducing that plaintiff had been a dancer, Jones then asked plaintiff where was the craziest place that she had ever had sex, her favorite sex position, whether she was bisexual and whether

---

[3]    The record does not reflect that Jones actually received coaching by HR upon his return to work.

she gave private dances or worked parties.  Plaintiff felt uncomfortable and scared, and wanted to finish the work quickly so that she could leave.   She kept trying to steer the conversation to non-sexual topics such as cars, guns and fishing.

Near the end of the day, plaintiff and Jones were loading boxes onto a skid, which required them to be on opposite sides of the trailer maneuvering their own sets of boxes.  Jones walked to plaintiff's side and plaintiff felt his hand on her "[mid-]thigh all the way up" to her "backside." Deposition Of Tiffany Reneae Norris ("Plaintiff's Deposition") (Doc. #31-1) at 135:17–18, 136:1. Plaintiff could not see his face, and he did not say a word.  Plaintiff immediately dropped the tool that she had been working with and left the trailer.  Plaintiff went three trailers down to her co-worker, Eric Soto.  She told Soto what happened and asked if he could give Jones a ride home. Soto agreed.  Plaintiff did not report the incident that day because she could not find any of her supervisors or HR employees at the end of her shift.  The next day, May 23, 2022, plaintiff took a sick day.[4]

On May 24, 2022, plaintiff reported the trailer incident to her resource officer, Isamar Alhakeem.[5]  Alhakeem instructed plaintiff to report the incident to HR to create a paper trail. Plaintiff went directly to the HR office and reported the incident to HR employees Muniz and Heather Young.  Muniz and Young did not take notes or ask questions during the meeting.  They told plaintiff that they would investigate.

---

[4]       The record does not indicate whether plaintiff's sick day was related to the trailer incident the day before.

[5]       Resource officers manage the leads (plaintiff's supervisors).

Defendant had scheduled plaintiff to work with Jones the day that she reported the trailer incident to HR. Plaintiff approached her leads and asked to be reassigned for the day. They responded, "Is it really that big of a deal?" Plaintiff's Deposition (Doc. #31-1) at 160:17–18. Plaintiff's co-worker ultimately agreed to switch positions so that plaintiff did not have to work with Jones.

Some time after May 24, defendant suspended Jones for five days based on plaintiff's complaint, pending the HR investigation.[6] Muniz investigated plaintiff's claims. He reviewed the available surveillance footage and interviewed Jones and other employees who had been in the vicinity at the time of the incident.[7] Jones denied touching plaintiff. On June 7, 2022, Muniz notified plaintiff that he was unable to substantiate her claim, and that HR was closing the matter.

On some unspecified date before Jones returned from his suspension, Muniz brought plaintiff into the office to inform her that Jones would be returning. When asked if she was okay, plaintiff said, "No, I'm not okay. You continue to keep me in a hazardous work environment." Id. at 146:12–14. During that conversation, plaintiff asked if she could be placed on another shift or moved to another area. Muniz explained that other positions were bid-based under the Collective Bargaining Agreement, so he could not move her outside of that process. Under the agreement, defendant was required to post job vacancies on a bulletin board for 72 hours. During that time, full-time employees who had completed their probationary periods could bid on the open positions, and defendant was required to award the bid to the senior eligible bidder. Before the

---

[6]     The parties do not provide the exact dates for which Jones was suspended.

[7]     Surveillance cameras are not present inside the trailers.

trailer incident, plaintiff had bid on eight other positions. She declined one position because she had bid on the shift by mistake. She was not successful on any of the seven other bids.

Once Jones returned to work, plaintiff did not work with him again.[8] She did, however, see him in the hallway, where he looked at her, smiled and laughed. After seeing him in the hallway, plaintiff took a few days off work, using her accrued points to do so.[9] She had felt uncomfortable that day in the hallway and was having a difficult time with everything that had happened. While plaintiff was off work, Muniz called plaintiff's home and spoke to her husband. Muniz asked him if plaintiff was coming back to work. Plaintiff's husband told plaintiff that she needed to call Muniz. On June 17, 2022, plaintiff did so. Plaintiff asked to be moved to work in a department different from Jones. Muniz told her that to transfer, she would have to be the successful bidder under the union contract. Plaintiff then resigned. Muniz told her that he would be "more than happy" to accept her resignation. Id. at 153:15–16. Plaintiff last worked on June 11, 2022.

On April 1, 2024, plaintiff filed suit against defendant, asserting two counts: sexual harassment/hostile work environment (Count I) and retaliation (Count II). Pretrial Order (Doc. #29) at 7. Specifically, plaintiff alleges that in violation of Title VII and the KAAD, (1) Jones subjected her to unwanted sexual conduct when he asked her questions of an inappropriate sexual nature and physically touched her thigh and "backside;" (2) defendant refused to take meaningful action to separate plaintiff from Jones in the workplace; (3) defendant retaliated for her complaint of sexual harassment by failing to take appropriate action against Jones and refusing to move her

---

[8]    Again, the parties do not provide the dates for which Jones was suspended or when he returned to work.

[9]    The parties do not specify the dates when plaintiff took off work.

to a position away from him; and (4) by failing to take appropriate action, defendant constructively discharged her.[10]  See id.

On March 7, 2025, defendant filed its motion for summary judgment.  See Motion For Summary Judgment (Doc. #30).

## Analysis

Defendant seeks summary judgment on plaintiff's sexual harassment/hostile work environment, retaliation and constructive discharge claims under Title VII and the KAAD. Specifically, defendant argues that (1) plaintiff cannot establish that any harassment was objectively severe or pervasive; (2) it is not liable for the alleged harassment because it did not know and had no reason to know of the harassment until plaintiff reported it, and after her report, defendant promptly took action to correct it; (3) plaintiff cannot establish that in retaliation for her protected activity, it subjected her to adverse employment action that was causally connected to her complaint of sexual harassment; and (4) plaintiff cannot establish that working conditions were so intolerable that she had no choice but to quit.

Plaintiff asserts identical claims under both Title VII and the KAAD.  Pretrial Order (Doc. #29) at 7.  Because the same standards and burdens apply to claims under Title VII and the KAAD, the Court's analysis applies to both claims.  See Watson v. City of Topeka, 241 F. Supp. 2d 1223, 1230 (D. Kan. 2002) (hostile work environment); Singh v. Cordle, 936 F.3d 1022, 1042 (10th Cir. 2019) (retaliation); Williams v. Prison Health Servs., Inc., 159 F. Supp. 2d 1301, 1313–14 (D. Kan. 2001) (constructive discharge).[11]

---

[10]    Plaintiff does not bring a separate cause of action for constructive discharge.

[11]    The parties do not dispute that the Court applies the same analysis to Title VII and KAAD claims.

I.      **Sexual Harassment/Hostile Work Environment**

Plaintiff asserts that in violation of Title VII and the KAAD, defendant subjected her to unlawful sexual harassment, which created a hostile work environment.  Defendant seeks summary judgment on plaintiff's claim, arguing that (1) plaintiff cannot establish severe or pervasive harassment;[12] and (2) it is not liable for the alleged harassment because it did not know and had no reason to know of the harassment until plaintiff's report, when it promptly took action to correct the harassment.

Before the United States Supreme Court decided Muldrow v. City of St. Louis, Mo., 601 U.S. 346 (2024), the law was well established that to prove a hostile work environment under Title VII, plaintiff must show that (1) defendant discriminated against plaintiff because of her sex and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment.  Throupe v. Univ. of Denver, 988 F.3d 1243, 1251 (10th Cir. 2021). In hostile work environment cases, the alteration to a term or condition of employment is the hostile work environment itself.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (term of employment to not work in "discriminatorily hostile or abusive environment"); see also Kramer v. Wasatch Cnty. Sheriff's Off., 743 F.3d 726, 743 (10th Cir. 2014) (hostile work environment based on protected characteristic alters terms and conditions of employment).

In Muldrow, the Supreme Court altered the Title VII landscape by holding that when plaintiffs bring suit under Title VII's discrimination prong, they need not show that harm was "significant" or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."  Muldrow, 601 U.S. at 355.  Instead, plaintiffs need only show "some

---

[12]     Defendant does not argue that plaintiff cannot establish the subjective element of a hostile work environment claim.

harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment.  Id. at 354–55.  It held that Title VII's anti-discrimination provision simply "seeks a workplace where individuals are not discriminated against" because of traits such as sex, and "thus flatly prevent[s] injury to individuals based on status, without distinguishing between significant and less significant harms."  Id. at 358 (internal citations omitted).

As of yet, the Tenth Circuit has not analyzed the scope of Muldrow and whether it alters the elements of hostile work environment claims under Title VII.  Hostile work environment is a form of discrimination which is actionable under Title VII's anti-discrimination provision, so in response to defendant's motion, the Court considers defendant's motion under both pre-Muldrow and Muldrow standards.  In other words, the Court first considers whether plaintiff can establish that she suffered severe or pervasive harassment which altered the terms or conditions of her employment under pre-Muldrow law.  The Court then views plaintiff's claim through the lens of Muldrow and asks whether plaintiff can establish that she suffered some harm or some disadvantageous change with respect to an identifiable term or condition of her employment on account of a hostile work environment.

> A.    Whether Plaintiff Can Establish Severe Or Pervasive Harassment

A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice."  Morgan, 536 U.S. at 117.  "An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Iweha v. State of Kan., 121 F.4th 1208, 1221 (10th Cir. 2024).  Plaintiff must prove that her work environment was both subjectively hostile and objectively hostile.  Throupe, 988 F.3d at 1252.  To make this determination, the Court

looks at the totality of the circumstances and considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Whether a hostile work environment exists "is not, and by its nature cannot be, a mathematically precise test." Id. at 22. Rather, it "depends not only on the number of incidents, but also on the severity of the incidents." Tademy v. Union Pac. Corp., 614 F.3d 1132, 1143 (10th Cir. 2008). Whether a work environment is hostile is disjunctive—pervasiveness and severity are independent and equal grounds on which plaintiff can support her hostile work environment claim. Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015). Indeed, this circuit has found that when sufficiently severe, a single act can constitute a hostile work environment. See Turnbull v. Topeka State Hospital, 255 F.3d 1238, 1243 (10th Cir. 2001) (though one incident, sexual assault was objectively abusive, dangerous and humiliating and sufficient to create sexually hostile work environment).

Here, plaintiff has presented evidence that (1) on May 22, 2022, Jones asked if she was married, whether she had kids, where she was from, where she had previously worked, the craziest place where she had ever had sex, her favorite sex position, whether she was bisexual and whether she gave private dances or worked parties; (2) later that same day, Jones walked to plaintiff's side of the trailer and placed his hand on her mid-thigh, moving it all the way up to her "backside;" (3) when Jones returned to work, plaintiff saw him in the hallway, where he looked at her, smiled and laughed; (4) after plaintiff saw Jones in the hallway, she took a few days off work; and (5) plaintiff felt scared and uncomfortable.

### 1. Pervasiveness

On this record, a reasonable jury could not find that plaintiff suffered pervasive harassment. The Court evaluates pervasiveness by comparing the number of offending incidents to the length of time over which the incidents occurred. See Morris v. City of Colorado Springs, 666 F.3d 654, 665, 669 (10th Cir. 2012) (viewing isolated incidents in context of otherwise uneventful tenure). Plaintiff has presented evidence that on one occasion over the four months of her employment, Jones asked her inappropriate questions and placed his hand on her mid-thigh, moving it up to her backside. On another occasion, following her complaint, plaintiff saw Jones in the hallway, where he smiled and laughed at her. Giving plaintiff the benefit of all reasonable inferences, Jones could be seen as mocking or leering at plaintiff. Even considering both incidents, however, a reasonable jury would not find that plaintiff suffered pervasive harassment. See Brown v. LaFerry's LP Gas Co., 708 F. App'x 518, 522–23 (10th Cir. 2017) (three incidents over six months not pervasive); Dunegan v. City of Council Grove, Kan. Water Dep't, 77 F. Supp. 2d 1192, 1198 (D. Kan. 1999) (two incidents occurring nine months apart not pervasive) (citing Gipson v. KAS Snacktime Co., 171 F.3d 574, 579 (8th Cir.1999) (two incidents over two months not pervasive)). Plaintiff has presented evidence of discrete incidents, which as a matter of law, cannot be viewed as pervasive.

### 2. Severity

As to severity, on the other hand, a reasonable jury could find that plaintiff suffered severe harassment. Plaintiff can rely on severity to overcome summary judgment in "particularly threatening or humiliating circumstances." Throupe, 988 F.3d at 1255. Such circumstances exist here. In conjunction with an inappropriate, invasive and humiliating line of questioning, Jones placed his hand on plaintiff's mid-thigh, moving it all the way up to her "backside." While

physical conduct does not automatically produce liability under Title VII, it can constitute severe harassment in egregious cases which are sexual in nature.  See Campbell v. Kan. State Univ., 780 F. Supp. 755, 762 (D. Kan. 1991) (slapping plaintiff's butt "patently abusive"); cf. Jones v. Wichita State Univ., 528 F. Supp. 2d 1222, 1240 (D. Kan. 2007) (fondling or groping hand not sufficiently severe).  On this record, plaintiff has created a genuine issue of material fact whether Jones's conduct was sufficiently severe to create an objectively hostile work environment.  Under pre-Muldrow law, the Court therefore overrules defendant's motion for summary judgment on this issue.

B.    Whether Plaintiff Can Establish Some Harm Or Disadvantageous Change To A Term Or Condition Of Employment

Under Muldrow, to maintain a sexually hostile work environment claim, plaintiff need only show "some harm" or "some disadvantageous change" with respect to an identifiable term or condition of employment.    Muldrow, 601 U.S. at 354–55.  The phrase "terms, conditions, or privileges of employment" under Title VII is intended to address the entire spectrum of workplace discrimination, including requiring employees to work in a discriminatorily hostile or abusive environment.  Harris, 510 U.S. at 21; see Morgan, 536 U.S. at 116 (term of employment to not work in "discriminatorily hostile or abusive environment").

As noted, plaintiff has presented evidence that (1) on May 22, 2022, Jones asked if she was married, whether she had kids, where she was from, where she had previously worked, the craziest place where she had ever had sex, her favorite sex position, whether she was bisexual and whether she gave private dances or worked parties; (2) later that same day, Jones walked to plaintiff's side of the trailer and placed his hand on her mid-thigh, moving it all the way up to her "backside;" (3) when Jones returned to work, plaintiff saw him in the hallway, where he looked at her, smiled

and laughed; (4) after plaintiff saw Jones in the hallway, she took a few days off work; and (5) plaintiff felt scared and uncomfortable.

Under Muldrow, plaintiff has demonstrated a genuine issue of material fact whether she suffered some harm to the terms or conditions of her employment. Plaintiff has presented evidence that Jones's harassment impacted her job schedule and performance, caused her to avoid one-on-one contact with a fellow employee and made her feel scared and uncomfortable in her workplace. Viewing the above evidence in the light most favorable to plaintiff, a jury could find that defendant subjected plaintiff to some harm with respect to an identifiable term or condition of her employment.

Defendant is not entitled to summary judgment under either the pre-Muldrow or post-Muldrow standard for hostile work environment claims.

C.      Whether Defendant Can Be Directly Liable For Jones's Conduct

Defendant seeks summary judgment on plaintiff's hostile work environment claim, arguing that it cannot be held liable for conduct by Jones. An employer is directly liable for a hostile work environment when (1) it knew or should have known about the harassing conduct and (2) failed to take appropriate remedial action to stop it. Throupe, 988 F.3d at 1251.

1.      **Actual Knowledge**

Defendant argues that because plaintiff had no issues with Jones before the trailer incident on May 22, 2022, it did not know or have reason to know about the harassing conduct.

To determine whether defendant had actual knowledge of sexual harassment, the Court may consider acts by other employees. Debord v. Mercy Health Sys. of Kan., Inc., 737 F.3d 642, 651 (10th Cir. 2013). The Court looks at "[t]he extent and seriousness of the earlier harassment and the similarity and nearness in time to the later harassment." Id. Here, plaintiff has presented

-14-

evidence that (1) in March of 2022, another female employee reported that while on a smoke break with Jones, he showed her a picture of his penis and told her "I just wanna make sure it's good enough;" (2) HR suspended Jones pending an investigation of that incident; and (3) Muniz determined that it was a "he said, she said" situation, but told the individuals involved in that incident that Jones would undergo coaching upon his return from the suspension.[13]

Viewing this evidence in the light most favorable to plaintiff, she has created a genuine issue of material fact whether Funk's report put defendant on notice of the type of harassment which plaintiff reported.  The trailer incident occurred just two months after Funk reported unwelcome sexual conduct by Jones at work.  Considering the nearness in time, the prior event creates a genuine issue of material fact whether defendant had actual notice that Jones was engaging in unwelcome sexual conduct and whether defendant had taken prompt and effective remedial action to address it.  Cf. Debord, 737 F.3d at 651 (event three years prior cannot support actual notice).  Plaintiff has also presented evidence on the extent, seriousness and similarity of the misconduct—both instances involved sexual comments and advances by Jones.  The fact that Jones never physically touched Funk is not dispositive; to establish notice, the law does not require that plaintiff cite only *identical* sexual conduct.  Tademy, 614 F.3d at 1147–48 (courts consider acts/comments *similar* to plaintiff's experience).  Accordingly, plaintiff has created a genuine issue of material fact whether Funk's report to HR placed defendant on notice of Jones's conduct.  The Court overrules defendant's motion for summary judgment on the first element.

---

[13]     As noted throughout this order, the record is devoid of any evidence that Jones actually received coaching following the incident with Funk.

### 2.    Appropriate Remedial Action

As to the second element, defendant argues that after plaintiff reported the incident, it took appropriate remedial action by promptly suspending Jones, and after he returned to work, Jones demonstrated no other harassing behavior toward plaintiff.

In considering whether defendant took appropriate remedial action, the Court determines "whether the remedial and preventative action was reasonably calculated to end the harassment." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998) (internal quotations omitted). Evidence that the harassment ended after HR's investigation is not necessarily sufficient, however, to demonstrate effectiveness and avoid liability under Title VII. Id. The Court also considers the timeliness of plaintiff's complaint, whether defendant unduly delayed responding and whether the response was proportional to the seriousness and frequency of the harassment. Id. Where the employee is a repeat offender, whether defendant's response is reasonable depends on "whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective." Id.

Plaintiff has presented evidence that (1) following Funk's sexual harassment complaint, HR suspended Jones pending an investigation of that incident;[14] (2) Muniz determined that it was a "he said, she said" situation, but told the individuals involved in that incident that Jones would undergo coaching when he returned; (3) HR told Jones that future violations would result in disciplinary action, up to and including termination; (4) two months later, Jones made inappropriate comments to plaintiff and touched her mid-thigh and backside; (5) when plaintiff

---

[14]    The record is unclear how long Jones was suspended, the dates of his suspension, whether the suspension was with or without pay and whether he actually received coaching following the suspension.

-16-

protested the fact that defendant had scheduled her and Jones to work together on May 24, plaintiff's leads initially refused and asked whether it was "really that big of a deal;" (6) HR suspended Jones for five days pending an investigation of the trailer incident;[15] (7) Jones returned to work after HR said that it was unable to substantiate plaintiff's claim;[16] and (8) defendant did not move either employee to a different schedule, shift or area.

On this record, plaintiff has shown a genuine issue of material fact whether defendant took prompt and effective remedial action.  Following plaintiff's report, defendant did promptly suspend Jones—which was the same discipline that he had received for Funk's complaint.  The record does not show that after his first suspension, Jones received any coaching or discipline.  The record is further devoid of any evidence that after his second suspension, Jones received any coaching or discipline, despite repeated similar allegations.  Moreover, defendant took no steps to place Jones or plaintiff in different work areas, despite having moved plaintiff elsewhere on previous occasions.  Though Jones made no further advances toward plaintiff, defendant allowed ample opportunity for him to do so.  Accordingly, plaintiff has created a genuine issue of material fact whether defendant took appropriate remedial action.   The Court therefore overrules defendant's motion for summary judgment on the second element.

In sum, the Court overrules defendant's motion for summary judgment on plaintiff's sexual harassment/hostile work environment claims under Title VII and the KAAD, finding that genuine issues of material fact remain for the jury.

---

[15]    The record is unclear on the dates of this suspension, whether the suspension was with or without pay and whether Jones received coaching following the suspension.

[16]    Neither party presents evidence on the procedures that HR uses to investigate complaints or what kind of "substantiation" HR requires before disciplining an employee or terminating an individual's employment.

## II.    Retaliation

Plaintiff asserts that in violation of Title VII and the KAAD, defendant retaliated against her for reporting sexual harassment by (1) failing to take appropriate action against Jones; (2) forcing her to work alongside Jones upon his return to work;[17] and (3) refusing to move her to a position away from Jones.  Defendant seeks summary judgment on plaintiff's retaliation claim, arguing that plaintiff cannot establish that in retaliation for protected activity, it subjected her to adverse employment action that was causally connected to her complaint of sexual harassment.

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination; (2) she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between her protected activity and the adverse action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018).

### A.    Whether Plaintiff Can Establish Adverse Employment Action

Defendant argues that plaintiff cannot establish that she suffered adverse employment action following her complaint.

Muldrow distinguished adverse employment action in the context of Title VII discrimination claims and adverse employment action in the context of Title VII retaliation claims. Muldrow, 601 U.S. at 357.  Though Muldrow purported to lower the bar for adverse employment action in discrimination cases, it reaffirmed that in retaliation cases, plaintiffs must still show that the retaliatory action caused a "significant" harm, i.e. the employer took action serious enough to

---

[17]    The record does not show that plaintiff actually worked alongside Jones following her HR complaint.

dissuade a reasonable worker from making or supporting a charge of discrimination.  Id.; White, 548 U.S. at 68.  The Supreme Court drew this distinction based on the purpose behind the two statutory provisions.  Muldrow, 601 U.S. at 357.  The purpose behind Title VII's anti-retaliation provision was to capture employer actions "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination," and if an action caused less serious harm, it would not deter Title VII enforcement and thus fell outside the purposes of the ban on retaliation. Id.  Accordingly, to survive summary judgment, plaintiff must demonstrate a genuine issue of material fact whether she suffered adverse employment action which would dissuade a reasonable worker from making or supporting a charge of discrimination.  White, 548 U.S. at 68.

Here, plaintiff has presented evidence that (1) when plaintiff asked to be assigned away from Jones on May 24, her team leads responded, "Is it really that big of a deal?," and refused to reassign plaintiff until a co-worker offered to trade places with plaintiff; (2) after the trailer incident, despite having previously moved plaintiff to different areas outside of the collective bargaining process, Muniz refused to do so before Jones returned from his suspension and again on June 17; and (3) when Muniz again denied her third request to move, on June 17, plaintiff resigned and Muniz told her that he would be "more than happy" to accept her resignation.

Viewing the above evidence in the light most favorable to plaintiff, she has shown a genuine issue of material fact whether defendant's conduct would have dissuaded a reasonable employee from making or supporting a charge of discrimination.  Muniz cited the Collective Bargaining Agreement as defendant's reason for not re-assigning plaintiff, but defendant does not seek summary judgment on whether it had a legitimate, non-discriminatory reason for its refusal to reassign plaintiff.  Defendant correctly notes that generally, a failure to act is not adverse employment action because it leaves plaintiff no worse off than before her complaint.  Daniels v.

United Parcel Serv., Inc., 701 F.3d 620, 640 (10th Cir. 2012), abrogated on other grounds by Muldrow, 601 U.S. 346 (2024).  Here, however, defendant's failure to act required plaintiff to work with a serial harasser and exacerbated the hostile work environment—conduct that would easily dissuade a reasonable employee from making or supporting a charge of discrimination.  The Court therefore overrules defendant's motion for summary judgment on this element of plaintiff's prima facie case.

        B.      Whether Plaintiff Can Establish Causation

Defendant argues that plaintiff cannot establish a causal connection between her protected activity and its failure to discipline Jones or reassign plaintiff away from him.

Plaintiff may show a causal connection by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "[W]here a gap of three months or longer" exists between the protected activity and the retaliatory conduct, plaintiff must offer additional evidence to establish causation.  Bekkem v. Wilkie, 915 F.3d 1258, 1271 (10th Cir. 2019). Therefore, absent temporal proximity, "Title VII retaliation claims must be proved according to traditional principles of but-for causation" which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Here, plaintiff's claims fall well within the three-month period which justifies an inference of temporal proximity.  See Allen v. Garden City Co-op, Inc., 651 F. Supp. 2d 1249, 1259 (D. Kan. 2009).  Indeed, the events of this case span less than four weeks.  Plaintiff reported the trailer incident to HR on May 24.  That same day, her supervisors refused to change her previously scheduled shift with Jones until a co-worker offered to trade positions with plaintiff.  Over the next

few weeks, on some date before Jones returned from his suspension and again on June 17, plaintiff asked to be assigned away from Jones. Defendant refused. On this record, defendant has not shown that as a matter of law, it is entitled to summary judgment on the issue of causation.

The Court overrules defendant's motion for summary judgment on plaintiff's retaliation claims under Title VII and the KAAD.

**III.     Constructive Discharge**

Plaintiff does not advance a free-standing claim for constructive discharge, but alleges that on account of defendant's hostile work environment and retaliation, she had no choice but to quit her job, i.e. defendant constructively discharged her. Defendant seeks summary judgment, asserting that plaintiff cannot prove that her working conditions were so intolerable that she had no choice but to quit.

Constructive discharge occurs "when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004). The Court evaluates the voluntariness of an employee's resignation under an objective, totality of the circumstances standard. Id. at 1136. Constructive discharge requires more than actionable harassment or discrimination. Fischer v. Forestwood Co., 525 F.3d 972, 981 (10th Cir. 2008); see also Exum, 389 F.3d at 1135 (racial harassment and hostility "does not come close to demonstrating that [p]laintiff's resignation was objectively involuntary").

Defendant argues that plaintiff cannot establish that working conditions were so intolerable that she had no reasonable choice but to resign. Specifically, defendant highlights that after plaintiff complained about Jones, she never worked with him again and only saw him once in a crowded hallway.

Plaintiff responds that because defendant (1) took no meaningful action to address, remedy or cease the sexual harassment; (2) failed to engage in prompt and effective remedial action; and (3) baselessly refused to separate plaintiff from her harasser, she had no choice but to resign. Reviewing the totality of the circumstances and viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that working conditions were so intolerable that plaintiff had no choice but to quit.  Plaintiff repeatedly asked to be moved, to no avail. Despite having previously moved plaintiff to a different area, defendant took no action to separate her from Jones.  As the Court already noted, though Jones made no further advances toward plaintiff and she only saw him once more, defendant provided ample opportunity for the two to interact and refused to take prompt and effective remedial action.   On this record, a genuine issue of material fact remains whether plaintiff's resignation was indeed voluntary.  The Court therefore overrules defendant's motion for summary judgment on this ground.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #30) filed March 7, 2025 is **OVERRULED.**

Dated this 16th day of May, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-22-